The next case is People of the State of Illinois v. Dustin Fields Mr. Burke, proceed when you're ready Thank you, Your Honor I'm Robert Burke with the Office of the State Appellate Defender. I represent Dustin Fields We're asking the court to reverse outright one of his convictions for count two, attempted unlawful restraint Some facts I want to talk about right off the bat, right here at the start He did nothing to restrain this woman She was coming down south, coming down Maple Street and a Google map attached to my reply brief and over in Centralia, she's coming south on Maple Street To her immediate left is the Centralia Public Library He's driving on Maple Street on her right A block away on her right is US 51 I think over there it's called maybe Elm Street or something like that Route 161 is behind her, less than a block behind her That's also called Broadway Street, I believe, as it runs east-west through Centralia He didn't pull up onto the berm He didn't pull up onto the sidewalk He didn't use his car in any way to block her Now, the state's brief has a number of inaccuracies and irrelevancies in the facts and because of that, I want to actually talk about what he was charged with Count one was stalking For stalking, that's a co-ed offense and for that, you look to what did the complaining witness reasonably believe Did she reasonably believe that her safety was in danger? That is an objective standard, what is reasonable in these circumstances Count two, attempted unlawful restraint Attempt is an in-co-ed offense and for that, you have to have specific intent and you don't measure that objectively, you measure that subjectively What did Mr. Fields have in his mind? So the fact that she was scared goes to count one The fact that she was frightened goes to count one None of that goes to count two For count two, we have to look at what was in his mind Now, in-co-ed offenses are special in our law because it's real easy to say somebody tried to do something Well, how do you prove that somebody tried to do something? So because that's an allegation that's easy to make We say, if you're going to make that allegation, you have to prove that they had the intent to commit the crime You can't just toss it out there as a general intent crime The statute and the jury instructions both specify specific intent Under general intent, then you can look to what was reasonable in these circumstances Just as on count one, what was reasonable for this young woman to be feeling that day Well, that is an objective thing, that's count one, that is not count two Count two is specific intent, whether he intended to do something Your Honor, there's nothing in the record that shows that he specifically intended to restrain her that day Can I ask you this? The state has got in their brief on pages three and four a description of the testimony in the case and it leads up with the type of comments he was making $60 off her, a good time, and then she's crying and then he says, get into the van and we don't know if he said it loud, harsh, or whatever Now, isn't that a substantial step or a step to having, he wanted her to get in that van I don't know if he wanted her to get in the van, Your Honor Well, he said, get in the van Now, can't I infer from that, or can't the jury infer from that, that it was his intent to get her into that van and that would be restraint If she, for some reason, felt that she's 16, 17 years old, this is going on, he wants her in there Is that enough to prove attempt? The state cites no cases in its brief that says spoken words are a substantial step unless perhaps conspiracy and I don't know about that, it's a great question, Your Honor You think, is it your position then that spoken words cannot be a substantial step towards unlawful restraint or any crime, I guess They perhaps could be solicitation to commit murder, maybe, or something like that, like I said Yeah, it went too far, but just in this context No, I don't believe that in this context, that is a substantial step and that is, even if he meant to somehow kidnap her or something like that he's not restraining her, he's saying, get in the van Well, what do those spoken words mean? It's not the same like grabbing somebody and pulling them into the van or pulling the van up onto the sidewalk to block her path or anything like that It's just spoken words Spoken words can be quite powerful, I mean, depending on who you're directing them to I mean, we're not talking about a 6-year-old child, we're talking about a 17 at the time Yes But, well, go ahead with your argument Really, that's what I contend with, and that is the only evidence that the state has and that's no evidence at all, the fact that he spoke those words to her I mean, it would be different if she had said, oh, you've overborne my will, I'm getting in the van He was just driving aside His subjective intent at this time, you said Yes It's his Yes And his words clearly seem to express what he wanted Yeah, but that doesn't mean that he meant to restrain her He was telling her, hey, do something of your own volition He had gone through a lead-up of getting her voluntarily into the van I'll give you the $60, I'll give you a good time, I'll do all that And then finally he says, get in the van, just get in Now, isn't that maybe, he goes from voluntary to not voluntary I don't believe so, Your Honor Okay There was nothing about that that overbore her will He was making dirty comments He was talking about her breasts, he was asking for oral sex Get in the van for a good time He wasn't trying to kidnap her, he was trying to be a pervert And I don't believe that he meant to get her into his van I don't believe that she was in any danger of being taken into the van And the State has not argued that that phrase I know When you look at the charging instrument, the charging instrument doesn't say He took a substantial step in that he said get into the van The charging instrument, and we have to look at the charging instrument, the four corners of it Said he drove his van in front of her He did not drive his van in front of her, he drove his van beside her So you believe that they're limited to what was in their charging document? And that's what they're briefed, you know, I have to admit this is something I kind of, I had a question about Yes, for this I think you have to look to, for attempt, you have to look to the four corners Maybe there are other crimes that you could say well this or this or this But here they had to allege and prove certain things They allege that he was pulling the van in front, that was a substantial step They didn't allege that saying get in the van was a substantial step Could the jury consider his statement, get in the van, as evidence of what his intent was when he pulled the van alongside her? Well, yes It's all wrapped up together Sure, and by the way it was a bench trial before the Honorable Mr. Haney But the fact that that could have been considered as, where's his mind at? You still, that's the men's race, you still have to prove the actress' race What was the act he performed to get her in the van? Okay Or to the extent Let me ask a follow up question Your brief page four, you quote from page 135 of the record about what the alleged victim or the victim testified to About what happened out on the street And that's where you had the part about he was driving Yes Okay, now the state in their brief also citing the page 135 Says defendant's van was in between Ms. Castellari and her goal Ms. Castellari tried to cross the street but defendant kept driving right next to her blocking her egress Ms. Castellari speeded up and the defendant's van speeded up Finally, knowing she could not outrun defendant's car, Ms. Castellari fainted forward and then dashed behind defendant's van Is that just the state's extrapolation or is there more testimony on 135? That's extrapolation, Your Honor, and that's what I'm talking about I mean did the victim ever say I dashed behind his van to make my escape or anything like that Because he kept driving next to me, I couldn't get around Or do we have everything that she actually said in this quote that you put in your brief? I used quotes, the state did not use quotes I know, I'm just asking is that everything she said about it And the state's really just kind of, you know, giving an interpretation of her testimony Well I know that on page 135, and that's just one taken record, that's what we're both talking about There was other testimony on that page, the salient part of it was certainly less than half a page I'm just trying to figure out, did she say that when I tried to speed up, he'd speed up? No, she did not She never said that No, she said I was walking, he was driving beside me I started walking fast and he sped up and stayed beside me Okay, did she say I knew I couldn't outrun his car? I don't recall You see what I'm getting at, that's what I'm trying to figure out here And we'll get an answer here from Ms. Shanahan pretty soon I'm sure But is that an interpretation or is there more to the testimony than what we've got over here? There's not much more to the testimony And she says, if I'm to put words in her mouth, I juked left and ran right And I don't understand, I mean she doesn't say he slammed on his brakes and tried to stop me from getting behind the van I don't know why she would have faked like she was going to run in front of the van Maybe she thought that he would speed up to try to stop her, I don't know But what was in her mind is not the relevant thing, what was in his mind is the relevant thing And he did nothing, once she decided to run behind the van instead of run to the library or run Route 161 He did nothing to stop her, now he continued to stop her after that That's not one of the issues on appeal Okay, first we'll get you on rebuttal here in a few minutes Thank you Your Honor May I please report? Counsel, my name is Sharon Shanahan and I represent the people of the state of Illinois In his reply brief and before this court today, the defendant has spoken a great deal about the state's proof that the defendant intended to block Ms. Castellari's egress Now, and he says, well we can't talk about what the victim thought because that's what she thought, not what the defendant thought But I think we all know that it's Well we can't speculate about what she thought, right? I mean we got to go on the evidence that she testified to We know what she testified to, I'm talking about the defendant's intent The defendant's talking about the defendant's intent And he's saying, well you can't look at what she testified about, how she felt, in order to determine his intent Well, intent is rarely established by anything other than circumstantial evidence And so what we can do is look at her version of the facts to determine what his intent was Now we know that prior to the time we ever got to this point, this man's been following her for six blocks I believe it was I mean, I knew at the time I wrote the brief But she saw him at four different occasions as she progressed on her job And it was after these repeated sightings that she was extremely unnerved and decided to leave her planned path and get somewhere safe That goes to the stalking itself But the fact of the matter is she left her planned route and she is on, the defendant is correct, it's on the street that the library is on And so, as you point out, both of you have mentioned the fact that he told her to get in the van He pulled up next to her, right next to her, I mean he's right next to her Is there a testimony record? Does she say he was a foot away? He was two feet away? There is testimony about how far away she is I mean, this is what I'm getting at with what you have in your brief too, you know, whether or not you're giving an interpretation Did she say, do you have any testimony about him being right next to her? I would be glad to tell you, I take pretty good notes when I read a record On page 135, this is the defendant's testimony, the defendant could tell that she was crying This is the defendant's testimony? This is the victim's testimony On 134, the van pulled up straight through Mabel, pulled up next to the victim He asked the victim if she was on the track team She put her head down, said no, kept walking Then the defendant said, I'm on 134 now Then the defendant said, how big are your titties? The victim testified that she was scared, crying, she looked at the defendant I'm reading my notes The defendant said, oh, you must be a decoy The victim tried to get to Travis' house so she walked faster The defendant still kept driving right next to her while she was walking Now I'm on 134, 135 The defendant could tell she was crying and upset Page 135, the defendant said $60 to show me a good time in the van The victim says no, she's still crying The victim then told her to get into the van The victim had to cross the street because she was on the outside of the street from Travis' house She started walking very fast The defendant's driving, the victim's trying to cross the street The defendant keeps driving right next to her So she acts like she was going to go in front of him And then she ran behind him The victim was trying to get in front of the vehicle to cross the street But she couldn't get in front because the defendant speeded up So she ran behind him and she ran to Travis' house I'm reading from my notes of what is on pages 134 and 135 And I think that last part where she said that she was trying to get in front of the vehicle to cross the street But she couldn't get in front of him because the defendant speeded up So she ran behind him All she says, and we've got the quote here There's a question, but could you get in front of him when you tried to speed up? She said no because he was driving So that's when I ran behind him He was driving, we know he was driving the car But the issue is, what did he do to drive the car that restrained her? And is there anything in her testimony that really... At least what we have here, there's nothing that says he sped up or she sped up It does say that she sped up, he sped up It does say that She testified to that And he's already made these rather unnerving comments to make to a young girl like that And I think when you take what he said to her Where I think the fact finder can most definitely infer intent to what he's saying Now let's back up just a minute here What would have been the first thing I said Of the definition of unlawful restraint It is the detention of a person by some contact Which prevents her from moving from one place to another Now if that means moving from the east side of the street to the west side of the street That's unlawful restraint Furthermore, obviously it has to be willful and against the victim's consent This was most definitely against the victim's consent Actual or physical force is not a necessary element of unlawful restraint As long as the individual's freedom of locomotion is impaired Now I cited a 4th district case of People v. Lorner for that statement of law But you can find that in lots and lots and lots of cases that deal with unlawful restraint Freedom of locomotion is impaired He did not have to drive up onto the grass berm He did not have to cut her off And, I forgot the last thing The duration of the restraint, even if it's just a few seconds That's good enough A few seconds in which her freedom of locomotion is impaired is enough She's on the street, she turned down the street so she could get to safety She wanted to get to the other side of the street Because that's where she could get to her friend's house where she was safe She says she's speeded up, defendant speeded up She's been walking next to him now for quite some time Because he's talking to her, he can't be far away from her If he's talking to her, if he's looking at her breast size If he's making all these comments to her If he can see she's crying, he's not very far away from her She speeds up, he speeds up If you stop right then and there, that's unlawful restraint You're convicting, I guess it's good to convict him of unlawful restraint He's charged with attempted I think he absolutely could have been convicted of it I think he did, I think he completed the crime Was he charged with that? Originally, was he charged with unlawful restraint and was instructed on attempted? I think he was originally, now I'm drawing on memory That's okay, we can look at that No, he was originally charged with attempted Well, since we're just looking at attempted You're arguing all of these are the substantial step The driving and the what? Well, certainly an attempted crime is a lesser included offense of the actual crime So, if he actually did all of the things that established unlawful restraint Then certainly he's also guilty of attempted But the charge was attempted And I thought when I read this Why did you charge him thus with attempted complete crime? He restrained her To say she's not restrained is to say I'm sorry, I'm a dog trainer But we're going to analyze it from the standpoint of what he was convicted of Yes Okay But as I said, if you're convicted of the greater crime Then you're certainly convicted of the lesser To say that he's not restrained is to say that a sheepdog doesn't restrain sheep Because he's not biting He's just daring back and forth to prevent them from running away If he's right next to her She doesn't like it She speeds up He speeds up She doesn't like it She can't outrun a car So all she can do is make him pretend like he's going to take off running And then she paints behind him And those moments when he prevented her from crossing to the other side of the street Be they a few seconds or longer It's immaterial She wanted to cross to the side of the street She moved up to cross to the side of the street He prevented that He actually completed unlawful restraint So certainly there is sufficient evidence to convict him of attempted Just on the What was the disposition on the sentences on both? Do you have that? That's okay It'll be in the record I can look it up Yeah I do know Since you just asked that I'm looking at this judge saying this case wasn't even close Okay That's okay Rebuttal That's okay Again most of that argument was about her mental state About how extremely unnerved she was Well she was so extremely unnerved Let's give him five years in prison That's the sentence he received for stalking He's serving a five year sentence for extremely unnerving her I don't think we should punish him again for extremely unnerving her When he's serving five years What was the sentence on the attempted unlawful restraint? That was a class A misdemeanor Right Did it run concurrent? Yes Okay Go ahead So if we're going to focus on extremely unnerved He's being punished for that I don't think he should be punished for this attempt crime There was some confusion that day after he got arrested down at the jail About what to charge him with and the prosecutor got involved And ultimately these were the two charges I don't think they were amended but I might be wrong your honor Now there was talk about her freedom was impaired Well the thing that the state does not want to talk about Because they have nothing Is what was his mens rea What was his mental state That has to be specific intent in order to prove guilt And the state refuses to talk about that All they want to talk about is how extremely unnerved she was Well he's serving five years for how extremely unnerved she was Now the state also says that Attempt is a lesser included offense of the co-aid offense It is not a lesser included offense It has a different mental state It has a higher mental state It's not going to make it a lesser included offense It's only lesser to the extent that the punishment is lesser Now I want to get back to page 135 in the record This is most bothersome to me Justice Stewart was reading I believe just after that Defendant did not want Ms. Testolari to leave So he placed his van right next to her Pacing her as she slowed down and speeded up That is not on page 135 That is nowhere in the record That is made up of whole cloth It verges on fraud on the court It just so happens that it's the only way To misconstrue the evidence in this case Favorably to the state so that they can keep this conviction She never says I slowed down and he slowed down She never said I slowed down She said I was walking and I speeded up I was walking faster and he stayed beside her Are there any questions, Your Honor? No, thank you Thank you, Your Honor Well, we would like to thank both of you for your arguments today And your briefs And we will get to a decision at the earliest possible date